J-A34035-15
J-A34036-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: A.W.-D., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.W. | No. 1121 MDA 2015 |

Appeal from the Order entered June 3, 2015,
in the Court of Common Pleas of Cumberland County, Juvenile
Division, at No(s): CP-21-DP-0000127-2013

| | |
|---|---|
| IN THE INTEREST OF: L.W., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.W., MOTHER | No. 1122 MDA 2015 |

Appeal from the Order entered June 3, 2015,
in the Court of Common Pleas of Cumberland County, Juvenile
Division, at No(s): CP-21-DP-0000128-2013

| | |
|---|---|
| IN RE: ADOPT. OF: A.W.-D., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.W., MOTHER | No. 1144 MDA 2015 |

Appeal from the Decree entered June 10, 2015,
in the Court of Common Pleas of Cumberland County, Orphans'
Court, at No(s): 37 Adoptions 2015

| | |
|---|---|
| IN RE: ADOPT. OF: L.W., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.W., MOTHER | No. 1145 MDA 2015 |

Appeal from the Decree entered June 10, 2015,
in the Court of Common Pleas of Cumberland County, Orphans'
Court, at No(s): 36 Adoptions 2015

BEFORE: PANELLA, OTT, and JENKINS, JJ.

J-A34035-15
J-A34036-15

MEMORANDUM BY JENKINS, J.:                    **FILED JANUARY 29, 2016**

S.W. ("Mother") appeals from the Orders dated and entered on June 3, 2015, in the Cumberland County Court of Common Pleas, Juvenile Court Division, changing the permanency goals of her two dependent minor daughters, A.W.-D. ("Child 1"), born in August of 2010, and L.W. ("Child 2"), born in August of 2007 (collectively, "Children"), from reunification to adoption under section 6351 of the Juvenile Act, 42 Pa.C.S. § 6351, and the Decrees dated June 3, 2015 and entered on June 10, 2015, in the Cumberland County Court of Common Pleas, Orphans' Court Division, involuntarily terminating her parental rights to Children pursuant to 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b).[1]  We affirm.

The relevant facts and procedural history of this case are as follows. Cumberland County Children and Youth Services' ("CYS") involvement with Mother began in July 2013.  On July 3, 2013, CYS received a referral from law enforcement reporting that Mother and Father 1 were being arrested for possession of drug paraphernalia, possession of a controlled substance, and endangering the welfare of a child.  Dependency Petition, 7/9/13, at 3.  At the time of her arrest, Mother admitted to using ten bags of heroin per day. *Id.*  That same day, CYS obtained temporary legal and physical custody of Child 1 and placed her with her current foster family ("Foster Family").  On July 5, 2013, Child 1 was adjudicated dependent.  Child 2 was enrolled in a residential summer school program at the Milton Hershey School ("Milton")

---

[1] On June 3, 2015, the trial court also issued a Decree involuntarily terminating the parental rights of Child 1's father, F.D. ("Father 1").  Father 1 has not filed an appeal from the trial court's Decree, nor is he a party to this appeal.  Child 2's father, T.C., is deceased.

- 2 -

at the time of Child 1's emergency placement. CYS subsequently obtained legal and physical custody of Child 2, who was adjudicated dependent on August 1, 2013, and enrolled her at Milton.[2]

On July 31, 2013, a Family Service Plan ("FSP") was created, which set forth the following objectives for Mother: (1) to cooperate with CYS; (2) to maintain sobriety; and (3) to remain free from illegal activity. On August 8, 2013, Mother entered an inpatient drug and alcohol treatment program at White Deer Run/Cove Forge. CYS Permanency Planning Review Summary & Pre-Dispositional Statement, 12/9/13, at 2. She was successfully discharged on September 3, 2013, with a discharge recommendation of Intensive Outpatient Counseling ("IOC"). *Id.* However, Mother did not attend the recommended counseling and, on September 19, 2013, tested positive for heroin and cocaine. *Id.* at 3.

On October 17, 2013, the FSP was revised to include two additional objectives for Mother: to maintain stable housing and to improve mental health functioning. In January 2014, Mother entered a domestic violence shelter. CYS Permanency Planning Review Summary & Pre-Dispositional Statement, 5/16/14, at 3. After spending less than a week at the shelter, Mother was asked to leave because she did not abide by the shelter's curfew and admitted to consuming alcohol and marijuana. *Id.* On July 10, 2014, Mother underwent a drug and alcohol evaluation at Gaudenzia Harrisburg Outpatient Services ("Gaudenzia"). CYS Permanency Planning Review

---

[2] Children's half-sister, F.W., born in April of 2000, was also adjudicated dependent on August 1, 2013. The trial court's June 3, 2015 Orders changed F.W.'s permanency goal from reunification to permanent legal custodianship with Foster Family. Mother's appeal does not encompass the trial court's Orders as they relate to F.W.

Summary & Pre-Dispositional Statement, 10/14/14, at 2. She was recommended for IOC and was admitted to the program on July 16, 2014. *Id.*

On October 30, 2014, a permanency review hearing took place. After the hearing, the trial court issued a Permanency Review Order, in which it made the following findings and conclusions: (1) Mother was in moderate compliance with her FSP objectives; (2) Mother was taking advantage of opportunities for visitation with Child 1, regularly attending scheduled weekly visits supervised through Diakon Lutheran Services, but had not been maintaining consistent visitation with Child 2 at Milton, where she resides; (3) Mother was maintaining stable housing and had been residing in a one-bedroom apartment in Harrisburg since February 2014; and (4) Mother had not yet obtained mental health services. On November 10, 2014, the FSP was again revised to include two further objectives for Mother: to attend domestic violence counseling and to complete parenting education.

On November 14, 2014, Mother underwent a parenting evaluation. CYS Permanency Planning Review Summary & Pre-Dispositional Statement, 3/23/15, at 3. Based on the evaluation it was recommended that Mother participate in the Teaching Important Parenting Skills ("TIPS") program offered through Alternative Behavior Consultants ("ABC"), continue to participate in counseling and treatment programs for substance abuse issues, and follow through with all recommendations. *Id.* From December 12, 2014 through February 19, 2015, Mother participated in the TIPS program. *Id.*

Mother tested positive for cocaine on July 18, 2014. CYS Permanency Planning Review Summary & Pre-Dispositional Statement, 10/14/14, at 2. Further, on July 21, 2014, less than an hour before her testing appointment, Mother notified CYS that she would not be able to attend the scheduled drug screen because she was going to a friend's house to do laundry at the scheduled time. *Id.* at 2-3. However, despite these irregularities, Mother successfully completed the IOC program at Gaudenzia on December 5, 2014, and thereafter began outpatient counseling provided through the facility. *Id.* at 2.

From September 10, 2014 through January 8, 2015, of seventeen possible visits with Child 1, Mother attended only six. CYS Petition for Permanency & Dispositional Review Hearing, 5/20/15, at 2 (unpaginated). Thereafter, at Mother's request, visitation with Child 1 was to take place at ABC. *Id.* Mother attended her first visit on January 9, 2015, but cancelled the following week. *Id.* In February 2015, ABC offered visitation with Child 1 on four occasions and Mother was a no-show once and cancelled once. *Id.*

On January 9, 2015, CYS filed a petition seeking to change Children's permanency goal from reunification to adoption. A permanency review hearing to address CYS's goal change petition was scheduled for June 3, 2015. On April 23, 2015, Mother was unsuccessfully discharged from outpatient counseling at Gaudenzia due to her refusal to follow the staff's recommendation that she enter a six-month inpatient treatment program. Trial Ct. Op., 8/21/15, at 3 (citation omitted). The staff's recommendation was based upon Mother's relapse on July 18, 2014, as well as a public drunkenness citation that she received on March 8, 2015. *Id.* (citation

omitted).  Subsequently, on April 16, 2015, Mother entered an IOC program at White Deer Run of Harrisburg.  Notes of Testimony, 6/3/15, at 14.  On April 30, 2015, Mother tested positive for an undisclosed substance.  *Id.* at 16.  She was still in treatment at the facility as of the June 3, 2015 hearing.  Trial Ct. Op. at 3.

On March 26, 2015, a permanency review hearing took place.  After the hearing, the trial court issued a Permanency Review Order, in which it made the following findings and conclusions: (1) Mother was in moderate compliance with her FSP objectives; (2) Mother was participating in mental health services and medication management; (3) Mother was not complying with her FSP objective to maintain sobriety; (4) Mother was not complying with her FSP objective to refrain from illegal activity, as evidenced by her recent citation for public drunkenness; and (5) Mother was not fully cooperating with CYS's administration of random drug screens.  The trial court's Permanency Review Order also placed Child 2 with Foster Family although she would continue to reside at Milton.  *Id.* at 2.

On May 19, 2015, CYS filed a petition to involuntarily terminate the parental rights of Mother to Children, alleging the elements of 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b).[3]  On June 3, 2015, the trial court held a permanency review/termination hearing to address CYS's goal change and termination petitions.  At the hearing, CYS caseworker, Kaye-Lani Depaolo, testified that, since CYS took custody of Children in July/August 2013, Mother's visitation with Child 1 has been inconsistent while her visitation

---

[3] On May 19, 2015, CYS also filed a petition to involuntarily terminate the parental rights of Father 1 to Child 1, alleging the elements of 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b).

with Child 2 "really began in November [2014]." N.T., 6/3/15, at 51. Ms. Depaolo testified further that she does not believe termination of Mother's parental rights will adversely affect Children. ***Id.***

At the conclusion of the hearing, the trial court issued the underlying Orders, changing Children's permanency goals from reunification to adoption under section 6351 of the Juvenile Act, and Decrees, involuntarily terminating Mother's parental rights to Children pursuant to section 2511(a)(2), (5), (8), and (b) of the Adoption Act. On July 2, 2015, Mother filed simultaneously corresponding notices of appeal and concise statements of errors complained of on appeal, in accordance with Pa.R.A.P. 1925(a)(2)(i) and (b).[4]

On appeal, Mother raises three issues for our review:

1. Did the [t]rial [c]ourt err as a matter of law and abuse its discretion in determining that [CYS] presented evidence so clear, direct, weighty, and convincing as to enable the fact finder to come to a clear conviction without hesitancy[] of the truth of the precise facts in issue?

2. Did the [t]rial [c]ourt err as a matter of law and abuse its discretion in determining the best interests of [Children] would be served by changing the permanency goal from reunification to adoption, when the evidence indicated that Mother could provide for [Children's] needs and appropriately parent [Children]?

3. Did the [t]rial [c]ourt err as a matter of law and abuse its discretion in determining the best interests of [Children] would be served by terminating the parental rights of Mother, when the evidence indicated that the original reasons for placement of [Children] no longer exist or had been substantially eliminated?

---

[4] On July 22, 2015, this Court issued two orders, consolidating Mother's appeals at Nos. 1121 MDA 2015 and 1122 MDA 2015, and her appeals at Nos. 1144 MDA 2015 and 1145 MDA 2015, respectively.

J-A34035-15
J-A34036-15

Mother's Brief at 5.

We review appeals from the involuntary termination of parental rights according to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. *In re: R.J.T.*, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010)]. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. *Id.*; *R.I.S.*, [614 Pa. 275, 284,] 36 A.3d 567, 572 (Pa. 2011) (plurality opinion). As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. *Id.*; *see also Samuel-Bassett v. Kia Motors America, Inc.*, 613 Pa. 371[, 455], 34 A.3d 1, 51 (Pa. 2011); *Christianson v. Ely*, [575 Pa. 647, 654-655], 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. *Id.*

> As we discussed in *R.J.T.*, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. *R.J.T.*, [608 Pa. at 28-30], 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. *In re Adoption of Atencio*, [539 Pa. 161, 165,] 650 A.2d 1064, 1066 (Pa. 1994).

*In re Adoption of S.P.*, 616 Pa. 309, 325-26, 47 A.3d 817, 826-27 (2012).

- 8 -

Termination of parental rights is governed by section 2511 of the Adoption Act, 23 Pa.C.S. § 2511, which requires a bifurcated analysis:

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (*citing* 23 Pa.C.S. § 2511).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). Moreover, we have explained:

> [t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (*quoting In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

Here, the trial court terminated Mother's parental rights pursuant to section 2511(a)(2), (5), (8), and (b), which provide as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\* \* \*

(2) The repeated and continued incapacity, abuse, neglect, or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

\* \* \*

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

\* \* \*

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

\* \* \*

**(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (5), (8), and (b). We need only find sufficient grounds under any one subsection of section 2511(a) in order to affirm the trial court's decision to terminate parental rights. *In re T.M.T.*, 64 A.3d 1119 (Pa. Super. 2013).

In her brief on appeal, Mother argues that CYS presented insufficient evidence to sustain its burden under section 2511(a) and (b), and, thus, that the trial court abused its discretion in involuntarily terminating her parental rights to Children. Specifically, Mother contends that the evidence adduced fails to establish that she is incapable of or refuses to remedy the conditions that led to Children's placement, and she avers that said conditions— namely, her substance abuse issues–either have been eliminated or are in the process of being eliminated. Mother's Brief at 13. In support, Mother notes that, over the course of CYS's random drug screening from January 14, 2014 to February 9, 2015, she tested negative for drugs on ten occasions and tested positive only once on July 18, 2014. *Id.* Moreover, Mother emphasizes her progress with regard to her FSP objectives, such as her procurement and maintenance of stable housing and her participation in the TIPS parenting education program. *Id.* at 14. We disagree.

In order to terminate parental rights pursuant to section 2511(a)(8), it must be demonstrated that: "(1) [t]he child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child." *In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa. Super. 2003); 23 Pa.C.S. § 2511(a)(8). "Section 2511(a)(8) sets a 12-

month time frame for a parent to remedy the conditions that led to the children's removal by the court." ***In re A.R.***, 837 A.2d 560, 564 (Pa. Super. 2003). Once the 12-month period has been established, the trial court must next determine whether the conditions that led to the children's removal continue to exist. ***Id.*** "[I]f a parent fails to cooperate or appears incapable of benefiting from the reasonable efforts supplied over a realistic period of time, [the agency] has fulfilled its mandate and upon proof of satisfaction of the reasonable good faith effort, the termination petition may be granted." ***Id.*** (citation omitted). Moreover, "[a]s this Court has repeatedly indicated, termination under subsection (a)(8) 'does *not* require an evaluation of [a parent's] willingness or ability to remedy the conditions that led to placement of the children.'" ***In re I.J.***, 972 A.2d 5, 11 (Pa. Super. 2009) (*quoting* ***In re Adoption of R.J.S.***, 901 A.2d at 511) (*emphasis in original*). Instead, subsection (a)(8) "requires only that the conditions continue to exist, not an evaluation of parental willingness or ability to remedy them." ***Id.*** (*quoting* ***In re C.L.G.***, 956 A.2d 999, 1007 (Pa. Super. 2008) (*en banc*)).

In its Rule 1925(a) Opinion, the trial court explained its analysis under section 2511(a)(8) as follows:

> [Children] were removed from Mother's care by court order primarily because of her drug abuse. They had been in placement for 23 months and 22 months, respectively. [The trial court was] satisfied by clear and convincing evidence that Mother was still struggling with her addiction at the time of the [June 3, 2015] hearing.
>
> While Mother has made progress in her battle against her heroin addiction over the last year, she still has a long way to go. Despite her protestations to the contrary, [the trial court was] satisfied that Gaudenzia's recommendation for another

round of inpatient treatment was justified. She self-reported a drug relapse to her Gaudenzia counselor in March 2015. She received a citation for public drunkenness that same month, provided a positive drug test at White Deer Run [of Harrisburg] on April 30, 2015, and refused to submit to a drug test requested by [CYS] on May 28, 2015, less than one week before the hearing on this matter. Like most addicts who have yet to gain the upper hand in the battle against their addiction, Mother tended to explain away or minimize those circumstances. Suffice it to say that [the trial court] did not find her testimony to be credible.

Since [the trial court] found that the conditions leading to [Children's] removal continued to exist for more than 12 months, we then had to turn the focus of our inquiry to whether the termination of Mother's parental rights "would best serve the needs and welfare of [Children]." [The trial court was] satisfied that it would.

Both girls are part of a family that loves them and wants to adopt them. [Child 1] had lived with [Foster Family] for a large portion of her young life. [Child 2] very much wants to be adopted by [Foster Family]. They have formed a mutual bond with [Foster Family]. Their adoption will give them the permanency they need and are entitled to have. They are in a safe, secure, and loving environment where all of their physical and emotional needs are being met. [The trial court was] satisfied that they would suffer no adverse effects by the termination of Mother's parental rights. On the other hand, the positive effects of allowing them to be adopted by [Foster Family] are myriad. For those reasons, [the trial court] terminated Mother's parental rights.

Trial Ct. Op. at 6-7 (citation omitted).

After a careful review of the record, the trial court's Opinion, the briefs on appeal, and the relevant law, we conclude that the trial court's findings are supported by clear and convincing, competent, and sufficient evidence, and that it reasonably concluded that the elements of section 2511(a)(8) were met by the facts before it. We discern no abuse of discretion or error of law on this issue.

Having determined that the requirements of section 2511(a) are satisfied, we proceed to review whether the trial court properly found that termination of Mother's parental rights was in the best interest of Children under section 2511(b). With respect to section 2511(b), this Court has explained the requisite analysis as follows:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d [753, 762-63 (Pa. Super. 2008)]. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

Here, our review of the record indicates that there is clear and convincing, competent, and sufficient evidence to support the trial court's decision that termination of Mother's parental rights best serves Children's developmental, physical, and emotional needs and welfare. Although Mother has expressed a willingness to fulfill her parental duties regarding Children's needs and welfare, her lack of progress towards alleviating the circumstances that necessitated Children's placement in the first place is illustrative of her inability to do so. Moreover, Mother's overall failure to take advantage of opportunities to visit with Children over the course of their almost two years in placement stands in stark contrast to the efforts made

- 14 -

by Foster Family, who is pre-adoptive, to provide Child 1 with a stable and nurturing home while also serving as a welcoming resource for Child 2 during school breaks. As such, we find that it was appropriate for the trial court to determine that the termination of Mother's parental rights would not have a detrimental effect on Children and would be in Children's best interest. In consideration of these circumstances and our careful review of the record, we conclude that the trial court did not abuse its discretion or commit an error of law in finding competent evidence to support the termination of Mother's parental rights to Children under section 2511(b).

Finally, we address Mother's claim that the trial court committed an abuse of discretion in changing Children's permanency goals from reunification to adoption.

We review dependency cases according to the following standard:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re: R.J.T.*, 608 Pa. at 28-29, 9 A.3d at 1190 (citation omitted).

This matter is controlled by the Juvenile Act, 42 Pa.C.S. § 6301. In determining a petition for a goal change, the trial court must consider:

> the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved.

- 15 -

*In re A.K.*, 936 A.2d 528, 533 (Pa. Super. 2007) (*citing* 42 Pa.C.S. §
6351(f)).

Additionally, section 6351(f.1) of the Juvenile Act requires the trial
court to make a determination regarding the child's goal:

> **(f.1) Additional determination.—**Based upon the
> determinations made under subsection (f) and all relevant
> evidence presented at the hearing, the court shall
> determine one of the following:
>
> * * *
>
> (2) If and when the child will be placed for adoption,
> and the county agency will file for termination of
> parental rights in cases where return to the child's
> parent, guardian or custodian is not best suited to
> the safety, protection and physical, mental and
> moral welfare of the child.

42 Pa.C.S. § 6351(f.1).

On the issue of a goal change, this Court has stated:

> When a child is adjudicated dependent, the child's proper
> placement turns on what is in the child's best interest, not on
> what the parent wants or which goals the parent has achieved.
> **See In re Sweeney**, 574 A.2d 690, 691 (Pa. Super. 1990)
> (noting that "[o]nce a child is adjudicated dependent. . . the
> issues of custody and continuation of foster care are determined
> by the child's best interests").  Moreover, although preserving
> the unity of the family is a purpose of [the Juvenile Act], another
> purpose is to "provide for the care, protection, safety, and
> wholesome mental and physical development of children coming
> within the provisions of this chapter."  42 Pa.C.S.
> § 6301(b)(1.1).  Indeed, "[t]he relationship of parent and child
> is a status and not a property right, and one in which the state
> has an interest to protect the best interest of the child."  **In re
> E.F.V.**, 461 A.2d 1263, 1267 (Pa. Super. 1983) (citation
> omitted).

*In re K.C.*, 903 A.2d 12, 14-15 (Pa. Super. 2006).

On this issue, we find there was competent evidence in the record to support the trial court's decision that it was in Children's best interest to have their permanency goals changed from reunification to adoption. As such, we conclude that the trial court did not abuse its discretion in changing Children's permanency goals from reunification to adoption.

Accordingly, for the reasons stated above, we affirm the trial court's Orders, changing Children's permanency goals from reunification to adoption under 42 Pa.C.S. § 6351, and Decrees, involuntarily terminating Mother's parental rights to Children pursuant to 23 Pa.C.S. § 2511(a)(8) and (b).

Orders and Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/29/2016